This document was signed electronically on September 28, 2018, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: September 28, 2018



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re | ) Case No. 15-52420 |
| | ) |
| JASON E. MYERS and TIFFANY MYERS, | ) Chapter 7 |
| | ) |
| Debtors. | ) Adversary Proceeding No. 16-05038 |
| | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) Judge Alan M. Koschik |
| | ) |
| HAROLD A. CORZIN, Trustee | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EMERGENCY MEDICAL TRANSPORT, INC. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM DECISION ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Harold A. Corzin, the duly-appointed Chapter 7 trustee (the "Trustee") in the underlying

bankruptcy case from which this adversary proceeding arises, has filed a complaint for

determination and avoidance of an allegedly preferential transfer involving the Debtor Jason E. Myers (the "Debtor"), Debtor's father-in-law John Thomas ("Mr. Thomas"), and Defendant Emergency Medical Transport, Inc. (the "Defendant"). In the complaint, the Trustee alleges that, while insolvent, the Debtor transferred an interest in property to the Defendant on account of an antecedent debt on or 90 days before the date the Debtor filed for Chapter 7 relief. (Compl. ¶ 4-9). Thus, the Trustee seeks judgment on his complaint for the amount transferred, $3,756.03. (Compl. ¶ 10-11).

Currently before the Court is Defendant's Motion for Summary Judgment ("Motion"). [Docket No. 26] filed on December 22, 2016. The Trustee filed a Response to Defendant's Motion [Docket No. 29] on January 12, 2017, and Defendant filed a Reply in Support of its Motion [Docket No. 30] on January 27, 2017. In its Motion, the Defendant seeks judgment as a matter of law on the Trustee's complaint, arguing that because the transfer at issue did not concern property of the Debtor, it does not constitute an avoidable preferential transfer under 11 U.S.C. § 547. For the following reasons, Defendant's Motion for Summary Judgment will be granted.

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio. Venue is proper pursuant to 28 U.S.C. § 1409(a). Actions to determine, avoid, and recover preferences are core proceedings under 28 U.S.C. § 157(b)(1), (b)(2)(A) and (F) and the Court has authority to enter a final judgment.

## SUMMARY JUDGMENT STANDARD

In bankruptcy cases, including adversary proceedings, a party may move for summary judgment at any time before 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise. Fed. R. Bankr. P. 7056 (otherwise incorporating Fed. R. Civ. P. 56); *see also* Fed. R. Bankr. P. 9014(c). When a party so moves, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A Plaintiff movant must establish all essential elements supporting its claim in this fashion; a defendant must establish that any one (or more) essential elements of Plaintiff's claim fails, or establish all elements of one or more of defendant's affirmative defenses, in order to obtain a defense judgment by summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Evidence presented in support of summary judgment is viewed in the light most favorable to the non-moving party, "drawing all reasonable inferences in its favor." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). However, if a moving party meets its burden to establish a lack of genuine dispute as to a material fact, the burden then shifts to the non-moving party to "come forward with evidence which would support a judgment in its favor." *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e). In responding in this way to a motion for summary judgment, the non-moving party may not rely on a "mere scintilla of evidence" in support of its opposition to the motion. There must be enough evidence presented in which a fact-finder could reasonably find for the non-moving party. *Zenith*, 475 U.S. at 586.

**UNDISPUTED FACTUAL BACKGROUND**

The parties submitted a stipulation of facts for the court to take under advisement. (Docket No. 23). The following undisputed facts are derived from that stipulation, the deposition of the Debtor (Docket No. 28), and the Court's own docket.

On August 7, 2015, the Defendant Emergency Medical Transport, Inc. obtained a judgment against the Debtor in the Canton Municipal Court in the amount of $2,613.19, plus interest and costs, for funds previously advanced in connection with the Debtor having attended paramedic school while employed by the Defendant. One week later, on August 14, 2015, the Defendant sought court-ordered garnishment of funds located in the Debtor's JPMorgan Chase Bank account in order to satisfy the judgment, which the Canton Municipal Court granted and put into effect on August 19, 2015. The Debtor discussed the garnishment with Mr. Thomas shortly thereafter and, per Debtor's sworn deposition, Mr. Thomas "said that he would help us out by forwarding the money or loaning us the money to pay the judgment that was rendered against us in full…." (Docket No. 28, p. 7).

On August 24, 2015, Mr. Thomas -- not the Debtor -- purchased a cashier's check from PNC Bank, made payable to the Defendant in the amount of $3,756.03. The funds were drawn from Mr. Thomas's personal account and funds. The Debtor then met with Mr. Thomas at the latter's residence and signed his name alongside Mr. Thomas's on the check per the Defendant's counsel's instructions. Later on August 24, the Debtor delivered the cashier's check to the Defendant's attorneys, Day Ketterer Ltd., and received a receipt. The Defendant accepted the cashier's check as record satisfaction of its judgment against the Debtor on August 31, 2015.

The Debtor, along with his wife, Tiffany Myers, filed for Chapter 7 bankruptcy relief on October 7, 2015 and did not list Mr. Thomas as a creditor in their bankruptcy schedules. Trustee

Harold A. Corzin was subsequently appointed as acting trustee on behalf of the Debtor's estate and filed the complaint underlying this adversary proceeding on June 16, 2016.

## LEGAL ANALYSIS

Section 547(b) of the Bankruptcy Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
        (A) on or within 90 days before the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by provisions of this title.

11 U.S.C. § 547(b); *see MBNA America Bank, N.A. v. Meoli* (*In re Wells*), 561 F.3d 633, 634-35 (6th Cir. 2009); *Chase Manhattan Mortgage Corp. v. Shapiro* (*In re Lee*), 530 F.3d 458, 463-64 (6th Cir. 2008).

The parties agree that the only issue before the Court on summary judgment is whether the Debtor ever had a property interest in the cashier's check received by the Defendant.

**I.**     **The Debtor Did Not Have a Property Interest in the Cashier's Check.**

Section 541(a) of the Bankruptcy Code provides that, save for a few exceptions not relevant here, property of a debtor's estate includes "…all legal or equitable interests of the debtor in property as of the commencement of the case." Though "'[w]hat constitutes a transfer and when it is complete' is a matter of federal law," the contours of property rights and what

5

16-05038-amk     Doc 31     FILED 09/28/18     ENTERED 09/28/18 15:28:32     Page 5 of 11

constitutes an interest in property "are creatures of state law" where no federal law controls. *Barnhill v. Johnson*, 503 U.S. 393, 397-98 (1992) (quoting *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369-70 (1945)). Given that the Code does not define "property" or "interest in property," the Court looks to Ohio law as it pertains to cashier's checks and their attendant property interests.

"In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)). However, because the Ohio Supreme Court has not directly addressed the property interests implicated by use of a cashier's check in this context, the Court "may use the decisional law of the state's lower courts" in attempting "to ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins. Co.*, 197 F.3d at 1181 (citing *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)); *see also In re Alam*, 359 B.R. 142, 147 (6th Cir. BAP 2006).

"[A] cashier's check…is an instrument issued by an authorized officer of a bank and directed to another, evidencing the fact that the payee may demand and receive upon endorsement and presentation to the bank the amount stated on the face of the instrument. Such an instrument is paid from the bank's funds, and liability for payment rests solely on the issuing bank." *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 187 (Ohio 1956). Thus, unlike other bearer instruments, only the payee (i.e. the party made payable on the cashier's check) and the issuing bank maintain cognizable property interests in funds dispersed via cashier's check – the payee is entitled to receive the funds and the issuing bank is obligated to disperse them. *See*, *Cross v. Exchange Bank Co.*, 110 Ohio App. 219, 221 (Ohio Ct. App. 1958) ("In the purchase

from a bank of a…cashier's check, payable on its face to one other than the purchaser, the bank is the drawer, and the person named therein as the recipient of the amount specified to be transferred is the payee or drawee."). In other words, only the designated payee and the issuing bank maintain rights in, and control over, the funds evidenced by a cashier's check. *See Id.* The purchaser has no right to countermand payment on the instrument unless the transaction implicates fraud, failure of consideration, or payment is enjoined by court order. *Id.*; *see also Leo Syntax Auto Sales, Inc. v. Peoples Bank & Sav. Co.*, 215 N.E.2d 68, 70 (Ohio Com. Pl. 1965) ("It is well settled that the purchaser of a cashier's check payable to one other than the purchaser thereof has no right to countermand payment of the instrument after its issue…"); *National City Bank v. Citizens National Bank of Southwest Ohio*, No. 20323, 2004 WL 2588182, *2 (Ohio Ct. App. November 12, 2004); *Dayton Area School E.F.C.U. v. Nath*, No. 16956, 1998 WL 906397, **4-5 (Ohio Ct. App. September 4, 1998).

With Ohio law regarding cashier's checks and their attendant property interests in mind, the Court turns to federal bankruptcy law in order to determine whether a transfer constitutes an avoidable preference. *See Barnhill*, 503 U.S. at 397-98. In order for a transfer to be deemed an avoidable preference under Section 547, the property transferred must have been "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990); *see Spradlin v. Jarvis* (*In re Tri-City Turf Club, Inc.*), 323 F.3d 439, 443 (6th Cir. 2003). Accordingly, a trustee can only pursue "those legal or equitable interests that the debtor would have had at the time of the petition but for the debtor's transfer of those interests." 5 COLLIER ON BANKRUPTCY, ¶547.03[2] (16th Ed. 2018) (quoting *Glinka v. Bank of Vermont* (*In re Kelton Motors, Inc.*), 97 F.3d 22, 25 (2nd Cir. 1996)).

The transfer via cashier's check at issue in this case involved a third party (Mr. Thomas) and a creditor (Defendant). Typically, a transfer of property between a third party and a creditor is not avoidable as a preference unless the transfer "diminish[es] the fund to which other creditors can legally resort [to] for the payment of their debts." *Id.* Otherwise known as the "diminution of estate" doctrine, a court tasked with determining whether a third party transfer constitutes a voidable preference "asks whether the debtor controlled the property to the extent that he owned it and thus the transfer diminished his estate." *Mandross v. People's Banking Co.* (*In re Hartley*), 825 F.2d 1067, 1070 (6th Cir. 1987). "[A] voidable preference necessarily depletes the debtor's estate; without such a depletion, there cannot be a voidable preference." *McLemore v. Third Nat'l Bank in Nashville* (*In re Montgomery*), 983 F.2d 1389, 1394 (6th Cir. 1993) (citing *Hartley*, 825 F.2d at 1070). Further, "where the borrowed funds [at issue] have been specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor." *Id.* at 1395 (citing *Hartley*, 825 F.2d at 1070).

While there are some factual differences with the present case, the Court finds *Hartley* to be controlling. In *Hartley*, the Sixth Circuit found that a third party's loan to a debtor, earmarked for and directly paid to a creditor, did not constitute a voidable preference for purposes of § 547. *Hartley*, 825 F.2d at 1068. Instead, *Hartley* held that the trustee could only seek to recover the value of the collateral offered by the debtor as security for the loan at issue. *Id.* Further, the *Hartley* panel looked to which party "controlled the disposition of the funds" and found that the debtor only maintained control over the collateral he offered as security, not over the funds loaned. *Id.* at 1072.

Here, the Court finds that, even construing the facts in favor of the Trustee, the Debtor maintained little or no control over the funds at issue. Significantly, Mr. Thomas had the issuing bank make the cashier's check payable to the Defendant prior to handing it to the Debtor, an act that, under Ohio law, effectively prevented the funds from ever becoming property of the Debtor or his estate. *See Cross*, 110 Ohio App. at 221; *Leo Syntax Auto Sales, Inc.*, 215 N.E.2d at 70. Upon Mr. Thomas's purchase of the cashier's check, the only two entities with property interests in the check were the named payee (the Defendant) and the issuing bank. Thus, the Defendant's receipt of the cashier's check does not constitute a voidable preference because, even though it "pass[ed] through the debtor's hands in getting to" the Defendant, the cashier's check never became property of the Debtor given that it was clearly earmarked for payment to the Defendant. *See Montgomery*, 983 F.2d at 1395. Stated differently, the Debtor's estate has not been diminished by Mr. Thomas's payment to the Defendant because, instead of bettering one creditor at the expense of others, "[t]he transaction merely substituted one creditor for another without loss to the estate." *Hartley*, 825 F.2d at 1070. By obtaining satisfaction of the judgment debt owed the Defendant, the Debtor now owes Mr. Thomas instead of the Defendant,[1] to no detriment of other creditors or the Debtor's estate because the funds transferred would not "have been part of the estate had [they] not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58.

The Trustee's argument based upon *Yoppolo v. MBNA America Bank, N.A.* (*In re Dilworth*), 560 F.3d 562 (6th Cir. 2009) that the Debtor exerted sufficient control over the funds dispersed via cashier's check is unpersuasive. Unlike the case at hand, where the Debtor

---

1 The Court recognizes that the Debtor did not list Mr. Thomas in his Petition and Schedules. However, this fact is irrelevant to whether the cashier's check payment constituted a preference.

9

delivered to the Defendant a cashier's check drawn from a third party's bank account, the transfer at issue in *Dilworth* concerned a debtor's balance transfer between two personal credit cards in her name. 560 F.3d at 563. Put simply, *Dilworth* did not involve a true third party transfer and is thus largely inapplicable to the case at bar.

The Trustee asserts that Mr. Thomas would have paid whichever creditor the Debtor chose and that, accordingly, the Debtor "exercised total control" over the funds transferred. However, this argument relies on an unsupported presumption. The Court finds the Trustee's assertion of the Debtor's control to be unconvincing because it involves evidentiary inferences that are wholly unsupported by the record, particularly in light of the Debtor's sworn testimony that Mr. Thomas "said he would help us out…." (Docket No. 28, p. 7); *see Dilworth*, 560 F.3d at 565 (noting that the defendant bank "never claimed…that anyone other than [the debtor] made" the decision to make the transfer then at issue). Plaintiff has proffered no evidence to create a genuine issue of material fact that would allow the Court to find that Mr. Thomas was coerced or forced by the Debtor into paying the Defendant, such that the Debtor exercised sufficient indirect control over the cashier's check to make the transfer avoidable as a preference.

## CONCLUSION

Mr. Thomas's payment and satisfaction of the Debtor's judgment debt via cashier's check did not constitute an avoidable preferential transfer of property because at no point during the transaction did the funds at issue become property that would have been property of the Debtor's estate had the transaction not occurred. Accordingly, because there was never a point where the funds transferred would have become property of the Debtor's Chapter 7 estate if he had filed earlier, they fall outside the purview of the Trustee's avoidance powers and the Defendant is entitled to judgment as a matter of law on the Trustee's complaint.

The Court will enter a separate form of judgment granting the Motion for Summary Judgment consistent with this Memorandum Decision. The Court's Order granting the Motion for Summary Judgment will not be deemed entered until the separate form of Order has been docketed by the Clerk.

# # #